FORD et ux. v. LEONARD'S.

No. 15131.

Court of Civil Appeals of Texas.
Fort Worth.

April 14, 1950.

M. Hendricks Brown and Wm. B. Townsend, Fort Worth, for appellants.

Cantey, Hanger, Johnson, Scarborough & Gooch, J. Lee Johnson III, and J. Kirby Smith, Fort Worth, for appellee.

McDONALD, Chief Justice.

Appellee, defendant in the court below, operates a large retail store in Fort Worth. A part of the equipment of the store is a system of escalators which transport customers from one floor to another. On the occasion in question appellant Mrs. Ford, a customer, stepped onto one of the ascending escalators. About two steps ahead of Mrs. Ford on the escalator stood a large Negro woman who weighed about two hundred pounds. During the ascent of the escalator the Negro woman fell backwards, striking Mrs. Ford, which in turn caused Mrs. Ford to fall and suffer the personal injuries for which she and her husband seek damages in this suit.

Negligence was charged against defendant in appellants' petition in the following respects: (1) Causing the escalator to be stopped suddenly by manipulation of a stop button, which caused the Negro woman to be thrown against Mrs. Ford. (2) Allowing stop buttons or switches to be so placed as to be available for use by some person who did not have the express or implied authority to use same and who did cause the escalator to be stopped suddenly, causing the Negro woman to be thrown against Mrs. Ford. (3) Having as the only employee and representative of defendant close to and available for the use of the stop button, young and inexperienced salesladies whose principal attention was required to be directed toward the care of the departments to which such salespersons were assigned and toward the sale of merchandise under their care. (4) Failing to have a guard, monitor or agent stationed at the entrance to the escalator for the purpose of warning people who stepped on the escalator of the need of holding to the rail and particularly for the purpose of observing, watching, advising with and warning parties who were inexperienced in ascending on such escalators as to the safe manner in which to ride same. (5) Failure to have a guard, monitor and representative stationed at and near the escalator for the purpose of watching and verbally instructing and warning passengers to keep their hands on the rail at all times.

The trial court instructed a verdict for defendant at the close of the testimony, which action was tantamount to a finding that there was no evidence of probative force tending to support any of the pleaded grounds of recovery. In this situation, we will examine the evidence in the light most favorable to appellants.

The only witness at the trial who testified to having seen the Negro woman fall was Mrs. Ford. She testified that she was a frequent customer of appellee's store, and also testified that the escalators had been in operation about eighteen months prior to the time of trial, which would have been about one year prior to the time of the accident. When the escalators were first put into operation, there would be a store employee on each floor who would give customers instructions with respect to the use of the escalators. She had heard instructions given to the customers to hold to the hand rail. The hand rail was one which moved at the same speed as did the escalator, and was at a convenient height for a customer to hold to with his hand. Mrs. Ford had ridden the escalators five or six times a week before the time she was hurt. There was no guard or attendant near the escalator on the occasion in question. As Mrs. Ford approached the entrance of the escalator, the Negro woman was standing, looking at the escalator. Mrs. Ford asked her, "Are you getting on?" The reply was, "Yes'm, yes'm, I sho is." After another remark passed between them, the Negro woman stepped on. Mrs.

Ford stepped on about two steps behind her. As the escalator was ascending, the Negro woman began "making some kind of a racket" and threw her hands up. Mrs. Ford said, "Look out, grab the rail." The escalator stopped suddenly. In reply to the question, "Well now, when this escalator stopped what happened to the negro woman?" Mrs. Ford testified, "She fell on top of me." Mrs. Ford further said, "She fell from the stopping."

The escalator was stopped by a saleslady, a young woman seventeen years old. She testified that she heard a scream, that she was a short distance from the stop button, and that she pressed the stop button without waiting to find out what had happened. She had been instructed to stop the escalator in the event of an emergency or unusual happening. The Negro woman was not a witness. Mrs. Ford did not know whether the Negro woman held to the hand rail when she first stepped on the escalator. Mrs. Ford was holding to the hand rail. She said that the Negro woman, as they were ascending, was giggling and acting silly. Mrs. Ford was afraid that the woman would fall, but she was not falling at the time Mrs. Ford called to her to grab the rail. Mrs. Ford said that she did not ride without holding the rail, and that she thought that anybody that stood on the escalator without holding the rail would be liable to fall. Mrs. Ford did not know whether the Negro woman stepped up or down steps on the escalator as it was ascending, nor if she moved from side to side.

Appellants called as a witness a former employee of appellee, who had been in charge of the escalators. Although he testified on behalf of appellants, we can find nothing in his testimony tending to show any negligence of any kind in the operation of the escalators, nor in the manner of their construction or installation, nor in the stopping of the escalator by the young saleslady. On the contrary, the testimony of this witness was one way to the effect that the prudent thing to do in the event of an emergency or unusual happening would be to stop the escalator. Although Mrs. Ford testified that it stopped suddenly, there is nothing in the record from which it can reasonably be found or inferred that the stopping was done in such manner as probably caused the Negro woman to fall backwards. In fact, the only reasonable inference from the facts and circumstances in evidence is that a passenger on the escalator would fall forward, if at all, on the sudden stopping of escalator.

There is nothing in the record to justify a finding that the act of stopping the escalator under the circumstances shown by the evidence was negligent, and if it was not negligent, it follows that there was no negligence with reference to the placing of the push buttons at any particular place, or in the act of allowing the young saleslady in question to stop the escalators. We are unable to find any evidence to support a conclusion that appellee could reasonably have foreseen that the Negro woman or some other passenger would probably be caused to fall, at any rate backwards, in the event the escalator should be stopped in the normal manner described by appellants' own witness.

Nor can we find any evidence to support appellants' charge that appellee was negligent in failing to have guards, monitors or other representatives on hand to instruct customers as to the use of the escalators and to warn them to hold to the hand rail. The only witness who testified concerning it said that thousands of customers rode the escalators in appellee's store every day. Mrs. Ford did not know whether the Negro woman was holding to the rail when she first got onto the escalator. We apply common knowledge to the situation and say that any passenger on the escalator could lift his hand from the rail if he chose to do so, or ride without holding to the rail, regardless of any instruction or warning that might have been given to him by a guard or monitor, and also say that it would not be reasonably possible for such guards or monitors to give to so many persons the kind of instructions and warnings described in appellants' allegations. It is shown without dispute that large signs were prominently displayed near the entrance to the escalators which warned people to hold to the hand rails.

To repeat what has been said, at least in substance, we find no evidence tending to support any of the allegations of negligence, nor do we find any evidence tending to show that the acts alleged to be negligent, even if they were negligent, were a proximate cause of Mrs. Ford's injuries.

The briefs present the question whether the standard of care applicable to the case is the ordinary degree of care usually required of owners of premises, or the high degree of care required of common carriers. The evidence does not, as we view it, support a recovery under either theory.

The judgment of the trial court is affirmed.